**In re K.K.**

[Cite as *In re K.K.*, 192 Ohio App.3d 650, 2011-Ohio-192.]

Court of Appeals of Ohio,
Fifth District, Fairfield County.

No. 10–CA–30.

Decided Jan. 18, 2011.

James A. Fields, for appellant.

Lori E. Thomson, for appellee.

FARMER, Judge.

{¶ 1} On June 2, 2009, appellant, K.K., a juvenile, was charged with two counts of delinquency by illegal possession of drugs in violation of R.C. 2925.11. Those counts arose from a search of appellant's pants pockets and book bag while he was at high school.

{¶ 2} On July 2, 2008, appellant filed a motion to suppress/dismiss, claiming a warrantless search. A hearing before a magistrate was held on October 9, 2009. By decision filed November 12, 2009, the magistrate denied the motion. The trial court denied appellant's objections on November 24, 2009.

{¶ 3} A bench trial before a magistrate began on December 16, 2009. By an entry filed the same date, the magistrate found appellant to be a delinquent child on the two counts and ordered appellant to serve a six-month commitment with the Department of Youth Services. Findings of fact and conclusions of law were filed on January 15, 2010. The trial court approved and adopted the decision on January 25, 2010, and denied appellant's objections on May 19, 2010.

{¶ 4} Appellant filed an appeal, and this matter is now before this court for consideration. The assignment of error is as follows:

{¶ 5} "The trial court erred in overruling the juvenile's motion to suppress where a school official conducts a warrantless search at the direction of law enforcement."

{¶ 6} Appellant claims that the trial court erred in overruling his motion to suppress. We disagree.

{¶ 7} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether those findings of fact are against the manifest weight of the evidence. State v. Fanning (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583; State v. Klein (1991), 73 Ohio App.3d 486, 597 N.E.2d 1141; State v. Guysinger (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court's judgment for committing an error of law. State v. Williams (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, assuming that the trial court's findings of fact are not against the manifest weight of the evidence and that it has properly identified the

law to be applied, an appellant may argue that the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry* (1994), 95 Ohio App.3d 93, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 620 N.E.2d 906; *Guysinger.* As the United States Supreme Court held in *Ornelas v. United States* (1996), 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, "as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶ 8} Pursuant to Crim.R. 12(F), "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record." We note that findings of fact were filed on January 15, 2010.

{¶ 9} Appellant argues that the search by school officials was done at the specific request and direction of law enforcement and therefore it was an illegal, warrantless search.

{¶ 10} In *State v. Adams* (Jan. 8, 2002), Licking App. No. 01 CA 76, 2002 WL 27739, *1, this court thoroughly explained the law on school searches as follows:

{¶ 11} "In *New Jersey v. T.L.O.* (1985), 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720, the United States Supreme Court held that the Fourth Amendment's prohibition on unreasonable searches and seizures applies to searches conducted by public school officials. Id. at 333. Thus, '[i]n carrying out searches and other disciplinary functions pursuant to * * * [school disciplinary] policies, school officials act as representatives of the State, not merely as surrogates for the parents, and they cannot claim the parents' immunity from the strictures of the Fourth Amendment.' Id. at 336–337. The Court further concluded that the warrant requirement is unsuited to the school environment because it would unduly interfere with the maintenance of the swift and informal disciplinary procedures needed in the schools. Id. at 340. Thus, ' * * * school officials need not obtain a warrant before searching a student who is under their authority.' Id. 'Ordinarily, a search, * * * must be based upon "probable cause" to believe that a violation of the law has occurred.' * * * Id. However, a ' * * * school setting requires some modification of the level of suspicion of illicit activity needed to justify a search.' Id. The Court stated that in a number of cases it has recognized ' * * * the legality of searches and seizures based on suspicions that, although "reasonable," do not rise to the level of probable cause.' * * * Id. at 341. Thus, '[w]here a careful balancing of governmental and private interest suggests that the public interest is best served by a Fourth Amendment standard of reasonableness that stops short of probable cause, we have not hesitated to adopt such a standard.' Id. The Court concluded that in a school setting, the

legality of a student search depends on the 'reasonableness,' under all the circumstances, of the search, not on probable cause. Id. Determining reasonableness involves a two-part analysis. First, ' * * * one must consider "whether the * * * action was justified at its inception," * * *; second, one must determine whether the search as actually conducted "was reasonably related in scope to the circumstances which justified the interference in the first place," * * *.' ' * * * [A] search of a student by a teacher * * * will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school.' Id. at 341–342. 'Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.' Id. at 342." (Citations omitted.) *Adams* at *1.

{¶ 12} The initial step, then, is to determine the reasonableness of the search, which is a lower standard than probable cause:

{¶ 13} "We join the majority of courts that have examined this issue * * * in concluding that the accommodation of the privacy interests of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law. Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search." (Footnote omitted.) *New Jersey v. T.L.O.* (1985), 469 U.S. 325, 341, 105 S.Ct. 733, 83 L.Ed.2d 720.

{¶ 14} We note that the facts leading up to the search in this case are not in dispute:

{¶ 15} "3. Officer Sergeant Andrew Dreyer of the Fairfield County Sheriff's Department was working as a resource officer on February 17, 2009 for Lancaster High School which is located in Fairfield County, Ohio.

{¶ 16} "4. Officer Dreyer received information from Commander Brown that he had received a tip with regard to a Lancaster High School student, [K.K.], who may be dealing heroin. Officer Dreyer gave this information to Nathan Conrad, an assistant principal at the high school.

{¶ 17} "6. Mr. Conrad, an assistant principal at Lancaster High School, received a tip from Sergeant Dreyer that [K.K. might] possess illegal drugs. Mr. Conrad pulled [K.K.] from his class and escorted him to his office. [K.K.] brought his books and book bag with him to the office at Mr. Conrad's request. Mr. Conrad searched [K.K.] and his book bag and found a white plastic wrapper

and cellophane ball containing substances." See Magistrate's Findings of Fact filed January 15, 2010 at Finding Nos. 3, 4, and 6.

{¶ 18} Appellant argues that Conrad's decision to search him was "in conjunction with and at the direction of law enforcement."

{¶ 19} Sergeant Dreyer testified that once he relayed the "tip" information to school authorities, he had no further involvement until he learned of the results of the search. He specifically stated that after he passed along the information, he "[s]at in [his] office." Dreyer explained that his sole responsibility after receiving a tip is to pass it on to school authorities and "you leave it up to them * * * [and] hopefully, they will act on it."

{¶ 20} Conrad testified that pursuant to the "zero tolerance policy" at the school, once a tip is received, they will act upon it. He stated that Dreyer relayed the tip and never suggested anything to him or did anything about it. Conrad testified that it was his decision to search appellant based upon the tip from Dreyer. It is school policy to take any tip very seriously, whether it is anonymous or not. In fact, the school code of conduct discusses the zero-tolerance policy and the possibility of being searched. Each student receives and signs the conduct code at the beginning of each school year.

{¶ 21} We note that the motion to suppress did not challenge the reliability of the tip, but argued that the search was conducted at the request and direction of law enforcement, and therefore the school officials did not investigate on their own. The trial court's decision recognized that Dryer's tip resulted in Conrad's deciding to search appellant:

{¶ 22} "The Court is aware of the distinguishing factor in the instant case that the tip was from the police officer and that he in essence initiated the investigation and that ultimately the tip was from an anonymous source according to the record. However, the test to be applied is the 'reasonableness test' as stated above. In so applying this test to the instant facts, the Court determines that the search of [K.K.] by the school official, Nathan Conrad, met the reasonableness standard and therefore was a legal search."

{¶ 23} There is nothing in the developing case law that indicates that school officials must conduct an independent investigation as to the tip or its reliability. With the zero-tolerance policy, Conrad made a decision to search appellant. We find that the decision was made independent from police; therefore, it was not a "state action."

{¶ 24} The issue then remains whether the action was "justified at its inception." We conclude that it was, because of the zero-tolerance policy in the school's code of conduct and because it was the policy to act on all tips regardless of the source.

{¶ 25} The second inquiry is whether the search was reasonably related in scope to the circumstances. The search was of appellant's pants pockets and book bag and was therefore minimally intrusive and reasonable as it related to the tip.

{¶ 26} As Professor Lewis Katz states in Ohio Arrest, Search and Seizure (2009) 445, section 18:12, "[o]n the one hand, police should not be permitted to avoid Fourth Amendment requirements of a warrant and probable cause by using surrogates to search. Conversely, if police officers bring a school official information that would justify that official taking action if he learned of the information from a teacher or other student, the same societal interests are present that justified the warrantless search on reasonable suspicion in *T.L.O.*"

{¶ 27} Upon review, we find that the trial court's decision is supported by the facts and is in conformity with *T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720, and *Adams*, 2002 WL 27739, of this district.

{¶ 28} The sole assignment of error is denied.

{¶ 29} The judgment of the Court of Common Pleas of Fairfield County, Ohio, Juvenile Division, is hereby affirmed.

Judgment affirmed.

HOFFMAN, P.J., dissents.

DELANEY, J., concurs.

HOFFMAN, Presiding Judge, dissenting.

{¶ 30} I respectfully dissent from the majority opinion. Specifically, I disagree with the majority's application of *New Jersey v. T.L.O.* (1985), 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720, to the facts in this case. The opinion in *T.L.O.* expressly states:

{¶ 31} "We here consider only searches carried out by school authorities acting alone and on their own authority. This case does not present the question of the appropriate standard for assessing the legality of searches conducted by school officials in conjunction with or at the behest of law enforcement agencies, and we express no opinion on that question. Cf. *Picha v. Wielgos*, 410 F.Supp. 1214, 1219–1221 (N.D.Ill.1976) (holding probable-cause standard applicable to searches involving the police)." Id. at fn. 7.

{¶ 32} The court's reference to *Picha v. Wielgos* (1976), 410 F.Supp. 1214 implies that the court intends to apply the holding therein to cases in which school authorities carry out a search in conjunction with or at the behest of law enforcement. The court in *Picha* concluded as follows:

{¶ 33} "The law was settled, that when Renee Picha was searched, that she had a constitutional right not to be searched by school officials who were in contact with the police unless the extent of the intrusion occasioned by the search was justified in terms of the state interest of maintaining the order, discipline, safety, supervision, and education of the students within the school. This court further holds that in the circumstances of this case, Renee Picha had a constitutional right not to have the police cause a search in the absence of probable cause that she possessed an illegal material at the time of the search."

{¶ 34} Here, the school official searched appellant after having been informed by law enforcement of the tip. The majority concludes that the school official's decision to search was made independent from police; therefore, it was not a "state action." I disagree. In doing so, I concede that the search was not at the specific request and/or direction of law enforcement. However, the search would not have taken place but for the action by Dreyer of relaying the tip he received from Commander Brown. It was the relaying of the tip by Officer Dreyer that prompted the school official to search. I would find under the circumstances presented herein that the school acted in conjunction with law enforcement in initiating the search, and because the state failed to establish the reliability of the tip, no probable cause existed to search appellant

{¶ 35} I find that this case is distinguished from our prior opinion in *State v. Adams* (Jan. 8, 2002), Licking App. No. 01 CA 76, 2002 WL 27739, wherein a teacher had overheard students talking about the drugs being brought to the school for sale and informed an officer in the school, who then informed the principal. In *Adams,* the school had reasonable grounds independent of law enforcement to search the appellant. In the case sub judice, the school authorities did not have similar independent grounds. Rather, the school based their search on a tip relayed by a law-enforcement officer.

{¶ 36} I would find that the trial court erred in overruling the motion to suppress.